**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0546-19T4

A.M.,

    Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR
and MARK IV TRANSPORTATION
& LOGISTICS, INC.,

    Respondents.

_____

Submitted October 19, 2020 – Decided  November 6, 2020

Before Judges Rothstadt and Mayer.

On appeal from the Board of Review, Department of Labor, Docket No. 184,062

A.M., appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Jane C. Schuster, Assistant Attorney General, of counsel; Andy Jong, Deputy Attorney General, on the brief).

Respondent Mark IV Transportation & Logistics, Inc.
did not file a brief.

PER CURIAM

Claimant, A.M.,[1] appeals from a final agency decision of the Board of Review (Board), disqualifying him from receiving unemployment benefits in accordance with N.J.S.A. 43:21-5(a), because he left his employment as a tractor trailer truck driver with respondent, Mark IV Transportation & Logistics, Inc. (MT&L), voluntarily, without good cause attributable to the work. In reaching its decision, the Board adopted the findings of the Appeal Tribunal that concluded, under N.J.A.C. 12:17-9.3, claimant, who argued he left work due to a medical condition, "never submitted medical documentation regarding his ability to work, or that he could no longer continue to work. The claimant did not ask the employer if there was any other work for him which did not require him to drive a tractor trailer."

On appeal, claimant argues the Board's decision was erroneous because his employer did not "offer[ him] another position due to [his] disability," and he was entitled to "reasonable accommodations under the American [sic] with

---

[1] We use claimant's initials to protect his privacy, because the case concerns details of his medical condition.

Disabilities Act." We affirm as we conclude the Board's decision was supported by substantial credible evidence and it was legally correct.

The material facts established at a hearing before the Appeal Tribunal were not disputed and are summarized as follows. MT&L employed claimant as a truck driver from August 2017 through May 3, 2019, when he advised that he could no longer work. According to claimant, he was seen by his doctor a few days earlier and was told that due to his diabetes, when claimant needed in the future to renew his medical qualification to maintain his commercial driver's license (CDL), he probably could not do so. However, the doctor never told claimant to stop working, and claimant never provided his employer with any documents from his doctor confirming that he was suffering from a medical condition that prevented him from continuing his employment. Moreover, he did not make inquiry about performing other duties at MT&L, such as working in its warehouse, because that work paid less.

Thereafter, claimant applied for unemployment benefits, which a deputy director of the New Jersey Department of Labor and Workforce Development rejected after having determined that claimant was disqualified from receiving benefits because he "left [his] job voluntarily . . . for personal medical reasons [and] did not request other work from" MT&L. Claimant appealed that initial

determination, and the Appeal Tribunal scheduled a telephonic hearing that claimant and his employer's representative participated in on July 3, 2019.

During the hearing, claimant testified that when he went to see his doctor for his "certificat[ion]," that due to his "A1C[2]" level being "out of this world," claimant would not be able to renew his mandated Medical Examiner Certificate (medical card) which is required to maintain a CDL in New Jersey.[3] According to claimant, the medical card could not be maintained if there was a danger of him passing out because of his diabetes. However, claimant confirmed that his doctor did not tell him to stop driving but that claimant should "think about it" and that the doctor did not give claimant anything in writing that stated he should stop working. Moreover, claimant also confirmed that, as of the date of the hearing, his CDL was still "good" and that he did not seek to get his CDL renewed because he knew his A1C numbers "were not there." He recognized that his diabetes was not work related as it was not caused nor aggravated by his

---

[2] "A1C" refers to a test used to track an individual's average blood sugar over a period of three months. See Diabetes, All About Your A1C, Centers for Disease Control and Prevention, https://www.cdc.gov/diabetes/managing/managing-blood-sugar/a1c.html (last visited Oct. 23, 2020).

[3] According to claimant, he needed to have his "medical card" updated every six months in order to be permitted to drive a tractor trailer.

A-0546-19T4

job, but he decided to leave work because he did not want to faint while driving as he once did in his doctor's office.

Claimant also explained that on May 3, 2019, he advised MT&L's representatives that "he was having problems with his diabetes" and that he could not meet the requirements for the medical certification necessary to maintain his CDL. In response, claimant testified that the MT&L representative told him "good luck" and handed him his paycheck. Claimant did not ask about other positions, such as doing warehouse work, because he would be paid less.

MT&L's representative testified that claimant was "a great employee" and, had he not resigned, he could have continued working for the company. She also confirmed that as a truck driver claimant was required to get a physical completed periodically.

The Appeal Tribunal issued a written decision on July 5, 2019, affirming the deputy director's initial determination. Citing to N.J.A.C. 12:17-9.3, the decision explained that claimant neither provided the required medical certification nor made a reasonable effort to preserve his employment by "not ask[ing] the employer if there was any other work for him which did not require him to operate a tractor trailer."

5

Claimant appealed the Appeal Tribunal's determination to the Board and argued that, because of his health condition, he did not adequately explain to the Appeal Tribunal the extent of his medical issues and how his job impacted them. He also stated he expected that his employer would have offered him other work once he advised he could no longer drive a truck. On August 26, 2019, the Board issued its final agency decision affirming the Appeal Tribunal's determination. This appeal followed.

The scope of our review of an administrative agency's final determination is strictly limited. Brady v. Bd. of Rev., 152 N.J. 197, 210 (1997). The agency's decision may not be disturbed unless shown to be arbitrary, capricious, or unreasonable or inconsistent with the applicable law. Ibid.; In re Warren, 117 N.J. 295, 296 (1989). "If the Board's factual findings are supported 'by sufficient credible evidence, courts are obliged to accept them.'" Brady, 152 N.J. at 210 (quoting Self v. Bd. of Rev., 91 N.J. 453, 459 (1982)). Thus, "[i]n reviewing the factual findings made in an unemployment compensation proceeding, the test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Ibid. (alteration in original) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)).

6

In our review, we also "give due regard to . . . the agency's expertise where such expertise is a pertinent factor." Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). "However, '[i]n an appeal from a final agency decision, an appellate court is in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" Melnyk v. Bd. of Educ. of Delsea Reg'l High Sch. Dist., 241 N.J. 31, 40 (2020) (quoting Ardan v. Bd. of Rev., 231 N.J. 589, 604 (2018)).

Applying these principles, we find no error in the Board's decision to deny benefits. In order to avoid disqualification, claimant had the burden of establishing that he left work for "good cause attributable to work." Brady, 152 N.J. at 218. "Good cause attributable to such work" is defined by N.J.A.C. 12:17-9.1(b) as "a reason related directly to the individual's employment, which was so compelling as to give the individual no choice but to leave the employment." An employee has left work "voluntarily" within the meaning of the statute "only if 'the decision whether to go or to stay lay at the time with the worker alone.'" Lord v. Bd. of Rev., 425 N.J. Super. 187, 191 (App. Div. 2012) (quoting Campbell Soup Co. v. Bd. of Rev., 13 N.J. 431, 435 (1953)). An employee who quits a job without a sufficient work-related reason is disqualified from receiving benefits. See Self, 91 N.J. at 457.

7

Although a claimant who leaves work for a valid but otherwise personal reason is subject to disqualification, see Morgan v. Bd. of Rev., 77 N.J. Super. 209, 214 (App. Div. 1962), there is a "recognized exception to that rule . . . where an employee is unable to work because of illness and attempts to protect [his] employment." Self, 91 N.J. at 457; see also Ardan, 231 N.J. at 595–96. Where health prevents an employee from working, it is the employee's obligation to establish through competent medical evidence that a health issue attributable to work forced him to leave employment. See Wojcik v. Bd. of Rev., 58 N.J. 341, 344 (1971). When a non-work connected physical condition makes it necessary for an individual to leave work due to an inability to perform the job, the individual shall be disqualified for benefits for voluntarily leaving work, unless the work is medically proven to aggravate the condition. N.J.A.C. 12:17-9.3(b).[4] Therefore, a claimant "is not required to show . . . that [his]

---

[4] N.J.A.C. 12:17-9.3(b) provides:

> An individual who leaves a job due to a physical and/or mental condition or state of health which does not have a work-connected origin but is aggravated by working conditions will not be disqualified for benefits for voluntarily leaving work without good cause "attributable to such work," provided there was no other suitable work available which the individual could have performed within the limits of the disability. When a

illness was caused by [his] job or that it prevents [him] from performing the duties of [his] employment.  [He] is only required to show that the environment at [his] job aggravated [his] illness or will impair [his] continued recovery." Israel v. Bally's Park Place, Inc., 283 N.J. Super. 1, 5 (App. Div. 1996).  "[He can meet] that standard by showing, through uncontroverted medical evidence, that [his condition] has been and will be aggravated by the [work] environment." Ibid.  The claimant is required to establish an aggravation by supplying a medical certification supporting the claim that the work aggravated the condition.  N.J.A.C. 12:17-9.3(d)[5]; see also Israel, 283 N.J. Super. at 5.

Here, claimant failed to offer any competent medical evidence that established his diabetes prevented him from working when he left his position. Without such evidence, he failed to meet his burden.  To meet this burden, he had to supply a "medical certification . . . to support a finding of good cause attributable to the work."  N.J.A.C. 12:17-9.3(d).

non-work connected physical and/or mental condition makes it necessary for an individual to leave work due to an inability to perform the job, the individual shall be disqualified for benefits for voluntarily leaving work.

[5] The regulation states, "When an individual leaves work for health or medical reasons, medical certification shall be required to support a finding of good cause attributable to work."

In addition to establishing that a claimant suffers from the aggravation of a medical condition, he must prove that he did all that was necessary to protect his position. Yardville Supply Co. v. Bd. of Rev., 114 N.J. 371, 376 (1989). He must therefore prove that he gave his employer an opportunity to provide an accommodation and . . . "that, at the time of the claimant's departure, either the employer had no position available that would accommodate the claimant's condition or the claimant would not have been assigned to any such position." Ardan, 231 N.J. at 607. Here, not only did claimant testify he was not interested in other work that did not involve driving because it paid less, but he failed to even attempt to determine what those other opportunities were. "In short, [claimant] failed to establish that no 'suitable work' was available to [him] at" MT&L. Id. at 608.

Under these circumstances, we conclude that the Board's decision was not arbitrary, capricious or unreasonable as there was no medical evidence to support claimant's contentions, and claimant failed to otherwise meet his burden to establish there was no other work available for him.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0546-19T4